UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PROGRESSIVE GULF
INSURANCE COMPANY,
      Petitioner

v.                                                  CASE NO. 25-2098

WAY DOWN SOUTH &
ASSOCIATES, CHRISTIAN
JESUS VILLAMIZAR FUENTES and
DERETH CARR-FLOCK,
      Respondents/Interested Parties

**COMPLAINT FOR DECLARATORY JUDGMENT**

Petitioner, Progressive Gulf Insurance Company ("Progressive"), by counsel, for its Complaint for Declaratory Judgment, now states as follows:

PARTIES AND JURISDICTION

1. Progressive is an insurance company which is domiciled in Ohio and has a principal place of business in the State of Ohio. It is a citizen of the state of Ohio but is also licensed to conduct business in the State of Indiana.

2. Respondent Way Down South & Associates ("WDS") is Mississippi limited liability company with its primary place of business in Gulfport, Mississippi, and a citizen of the state of Mississippi.

3. Upon information and belief, Respondent Christian Jesus Villamizar Fuentes ("Villamizar Fuentes") is a resident of Montgomery County, Indiana and a citizen of the state of Indiana.

4. Upon information and belief, Respondent Dereth Carr-Flock ("Carr-Flock") is a resident of Parke County, Indiana and a citizen of the state of Indiana.

5. There is complete diversity of citizenship between the parties, per 28 U.S.C.§§ 1332 and 1441.

6. The amount in controversy is believed to be in excess of $75,000.

7. This court has jurisdiction over this action, pursuant to 28 U.S.C.§ 1331.

## FACTS

8. On January 22, 2024, a two-vehicle accident occurred on County Road 1000 North in Parke County, Indiana, between a 2019 Jeep Cherokee operated by Carr-Flock and a truck operated by Villamizar Fuentes ("the accident").

9. Upon information and belief, the vehicle Villamizar Fuentes was driving was a 2000 Ford F-250, VIN 1FTNW20L3YED98765, bearing plate number 1AR9924 ("the truck being operated by Villamizar Fuentes").

10. The police report prepared by the officers investigating the accident identified the truck being operated by Villamizar Fuentes as being owned by WDS.

11. Upon information and belief, Villamizar Fuentes was an employee and/or agent of WDS.

12. Upon information and belief, Villamizar Fuentes was operating the truck on behalf of and/or for the benefit of WDS and the business of WDS.

13. According to the police report, the truck being operated by Villamizar Fuentes went left of center on a curve and struck Carr-Flock's Jeep.

14. On May 1, 2024, Carr-Flock filed a lawsuit in the Montgomery County Circuit Court, cause number 54C01-2405-CT-000478 against Villamizar Fuentes and WDS ("the underlying lawsuit").

15. Carr-Flock was granted leave to amend her pleading in the underlying lawsuit and on February 18, 2025, she filed her First Amended Complaint for Personal Injury Damages, a true and accurate copy of which is attached hereto as **Exhibit A**.

16. The First Amended Complaint added Carr-Flock's insurer, Hastings Mutual Insurance Company, as a defendant for purposes of pursing an uninsured motorist claim.

17. In the underlying lawsuit, Carr-Flock sued Villamizar Fuentes for negligence, contending that he negligently operated the truck and caused a motor vehicle which resulted in injury to Carr-Flock.

18. In the underlying lawsuit, Carr-Flock also raised a vicarious liability claim against WDS, alleging that Villamizar Fuentes was acting within the course and scope of his employment for WDS, rendering WDS vicariously liable for Villamizar Fuentes' conduct.

19. Carr-Flock seeks to recover compensatory damages from Villamizar Fuentes and from WDS.

20. Progressive is providing a defense to WDS in the underlying lawsuit pursuant to a reservation of rights.

21. Progressive issued a commercial auto insurance contract to WDS, policy number 975794183 ("the Progressive policy" or "the insurance contract"), which was in force for a period spanning from December 19, 2023, to December 19, 2024. A true and accurate copy of the Progressive policy is attached hereto as **Exhibit B**.

22. Villamizar Fuentes was not listed as a rated driver on the declarations page of the insurance contract.

23. The only rated driver listed on the insurance contract was Bryon Bentley, a member of WDS.

24. The insurance contract only included one rated vehicle: a 2008 Chevrolet Express G3500 cargo van, VIN 1GCHG35K081160573.

25. An insurance premium was charged for that single rated vehicle.

26. There was no Ford F-250 listed on the Progressive policy at the time of its inception on December 19, 2023.

27. No Ford F-250 was added to the insurance contract at any time between the December 19, 2023, policy inception date and the date of the accident.

28. Progressive attempted to obtain information from WDS regarding the accident and the involved vehicle on multiple occasions but received no response from WDS.

29. In the course of its investigation into the accident, Progressive searched for Mississippi vehicle records documenting vehicles which were owned by or registered in the name of WDS.

30. The Mississippi vehicle records investigation identified a 2008 Ford F350, VIN 1FDWF30548EC54388, bearing plate 1DX451, which was registered by WDS on April 17, 2023.

31. The 2008 Ford F350 identified in the Mississippi driving records was not the vehicle being operated by Villamizar Fuentes at the time of the accident.

32. The 2008 Ford F350 identified in the Mississippi driving records was also not listed as a rated vehicle on the insurance contract, and WDS paid no premium to cover the 2008 Ford F350.

33. In its continuing investigation, Progressive also obtained documentation which showed that a 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 was most recently titled in Virginia in 2020 in the name of a business named Stealth Construction, Inc.

34. Progressive further obtained auction records which suggest that a 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 was sold at a Richie Bros. auction on September 13, 2022.

35. The 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 which was sold at auction on September 13, 2022, has the same year, make, model, and VIN as the vehicle which Villamizar Fuentes was operating at the time of the accident.

36. The 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 which was sold at auction on September 13, 2022, is the same vehicle which Villamizar Fuentes was operating at the time of the accident.

37. Progressive's investigation was unable to locate any title documentation regarding ownership of the 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 subsequent to the September 13, 2022, auction.

38. The September 13, 2022, auction occurred prior to the inception of the Progressive policy on December 19, 2023.

39. Progressive requested documents from WDS on multiple occasions regarding its ownership of the truck that Villamizar Fuentes was operating at the time of the accident.

40. WDS never provided any of the documents requested.

41. Progressive's counsel contacted WDS to further request the production of documents regarding WDS's ownership of the truck that Villamizar Fuentes was operating at the time of the accident as well as to request the examinations under oath of WDS authorized representatives with knowledge about the truck's ownership.

42. WDS did not respond to multiple communications from Progressive's counsel regarding the document request and EUO request.

43. Progressive's counsel noticed examinations under oath of WDS authorized representatives to be taken on two separate occasions and provided WDS notice of same.

44. No representatives of WDS attended either examination under oath.

45. The main coverage form in the Progressive policy was a commercial auto policy, form 6912 (02/19), which is an Indiana-based coverage form.

46. The commercial auto coverage form contained in the insurance contract included the following relevant language:

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. . . .

. . .

A person seeking coverage must:

1. cooperate with **us** in any matter concerning a claim or lawsuit;

2. provide any written proof of **loss we** may reasonably require;

3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit

. . .

7. authorize **us** to obtain medical and other records;

. . .

10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

. . .

## **GENERAL DEFINITIONS**

**The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.**

. . .

6. **"Insured auto"** or **"your insured auto"** means:

    a. Any **auto** specifically described on the **declarations page**; or

    b. An additional **auto** for Part I – Liability To Others . . . on the date **you** become the owner if:
       (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
       (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
       (iii) no other insurance policy provides coverage for that **auto**; and
       (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

       . . .

    c. Any replacement **auto** on the date **you** become the owner if:
       (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
       (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
       (iii) no other insurance policy provides coverage for that **auto**.

       . . .

17. **"Temporary substitute auto"** means any **auto you** do not own while used with the permission of the owner as a temporary

7

   substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. . . .

   . . .

21. **"You"**, **"your"** and **"yours"** refer to the named insured shown on the **declarations page**.

## PART I – LIABILITY TO OTHERS

**INSURING AGREEMENT – LIABILITY TO OTHERS**

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. . . .

   . . .

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in Part I – Liability To Others, **insured** means:

  1. **You** with respect to an insured auto.
  2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

   . . .

B. When used in Part I – Liability To Others, **insured auto** also includes:

   . . .

  3. Any **temporary substitute auto**;

   . . .

47. The Progressive policy also contained an "Any Automobile Legal Liability Coverage" endorsement, form Z442 (02/19), which included the following language:

**CHANGES TO PART I – LIABILITY TO OTHERS**

8

    I.    The following changes are made to the Additional Definitions Used in This Part Only section:

        A.    The definition of "**insured auto**" is modified to include:

            1.  **Hired autos**;
            2.  **Non-owned autos**; and
            3.  Any other **autos** owned by **you**:
                a.  only while being used in the conduct of **your** business; and
                b.  that do not qualify as either **hired autos** or as **non-owned autos**.

However, this modification to the definition of **insured auto** does not apply to any **auto** acquired prior to the current policy period. But, for any type of **auto** that **you** acquire during the current policy period, this modification extends coverage to that **auto** during the remainder of the policy period.

COVERAGE CONTENTIONS

48.    The truck that Villamizar Fuentes was operating at the time of the accident was not the 2008 Chevrolet Express G3500 cargo van listed on the insurance policy.

49.    The truck that Villamizar Fuentes was operating at the time of the accident was not described on the declarations page of the insurance contract.

50.    Since the truck that Villamizar Fuentes was operating was not described on the declarations page of the insurance contract, it does not qualify as an "insured auto" under paragraph 6.a. of the definition section.

51.    Paragraph 6.b. of the definition section applies to "additional autos" that "you" own.

52.    "You," as that term is defined, represents the named insured on the policy declarations, which is WDS.

53. Progressive's investigation was unable to determine whether WDS was the owner of the truck which Villamizar Fuentes was operating at the time of the accident.

54. Because Progressive's investigation was unable to determine whether WDS owned the truck that Villamizar Fuentes was operating at the time of the accident, it cannot be conclusively determined whether that vehicle was an "additional auto" that WDS owned.

55. If WDS never owned the truck that Villamizar Fuentes was operating at the time of the accident, then that truck would not qualify as an "additional auto" under paragraph 6.b. because it was not a truck that "you" owned.

56. If WDS was the party that purchased the 2000 Ford F-250 bearing VIN 1FTNW20L3YED98765 at auction on September 13, 2022, then WDS would have become the owner of the truck prior to the inception of the policy, and the vehicle would not qualify as an additional auto under paragraph 6.b.

57. Even if WDS owned the vehicle and first acquired it after the inception of the policy on December 19, 2023, then the vehicle Villamizar Fuentes was operating would not qualify as an additional auto under paragraph 6.b. if WDS used the Ford F-350 which it registered in Mississippi if WDS used that vehicle in its business.

58. There are no facts to suggest that WDS was using the truck Villamizar Fuentes was operating at the time of the accident as a replacement vehicle or a temporary substitute for the 2008 Chevrolet Express G3500 cargo van which was listed on the policy, although Progressive has been unable to explore that due to the lack of response by WDS to Progressive's requests for assistance.

59. WDS never notified Progressive that it had acquired the truck Villamizar Fuentes was using at the time of the accident or that it was going to use it as a replacement vehicle or temporary substitute vehicle.

60. The Any Automobile Legal Liability Coverage endorsement ("the endorsement") broadens the definition of "insured auto" to include any vehicle the insured owns and uses in the conduct of its business, unless the insured acquires the vehicle prior to the beginning of the policy period.

61. If the truck Villamizar Fuentes was operating at the time of the accident was never acquired by WDS, then the truck would not qualify as an insured auto under the endorsement.

62. If the truck Villamizar Fuentes was operating at the time of the accident was owned or acquired by WDS prior to the December 19, 2023, policy inception date, then the truck would not qualify as an insured auto under the endorsement.

63. Progressive's investigation did not uncover any facts to suggest that WDS did not acquire the truck Villamizar Fuentes was operating at the time of the accident until after the December 19, 2023, policy inception date.

64. WDS's failure to respond to Progressive's communications, failure to provide documents regarding the vehicle in question, and failure to submit to either examination under oath has hampered Progressive's ability to fully investigate the coverage issues related to the accident.

65. Progressive's requests for documents regarding the vehicle in question and request that authorized representatives of WDS submit to an examination under oath were reasonable requests permitted by the insurance contract and necessary as part of their investigation into

whether the Progressive policy applies to the accident and to Carr-Flock's claims in the underlying lawsuit.

66. WDS's failure to provide documents regarding the vehicle in question and failure to submit to either of the two scheduled examinations under oath are in breach of WDS's contractual duties in the event of an accident, which duties constitute a condition precedent to coverage under the insurance contract.

67. The liability insuring agreement applies to claims for bodily injury and property damage for which an insured is legally responsible because of an accident arising out of the ownership, maintenance, or use of an "insured auto."

68. Because the truck being operated by Villamizar Fuentes does not qualify as an "insured auto" under the Progressive policy, the liability insuring agreement is not triggered.

69. The accident did not involve an "insured auto" as that term is defined in the Progressive policy.

70. The application of the liability insuring agreement is also conditioned on the insured paying a premium for liability coverage for the insured auto involved in the accident.

71. WDS only paid a premium for one vehicle – the 2008 Chevrolet Express G3500 cargo van.

72. WDS did not pay a premium for liability coverage for the truck that Villamizar Fuentes was operating at the time of the accident.

73. Because WDS did not pay a premium for liability coverage for the truck that Villamizar Fuentes was operating at the time of the accident, that condition set forth in the insuring agreement was not met.

74. For the purposes of the liability coverage provided by the insurance contract, an "insured" includes "you" with respect to an "insured auto."

75. While WDS qualifies as "you," the truck that Villamizar Fuentes was operating at the time of the accident does not qualify as an "insured auto," meaning that WDS is not an insured under the insurance contract with respect to this accident.

76. For the purposes of the liability coverage provided by the insurance contract, an "insured" also includes a person using an "insured auto" with "your" permission.

77. Assuming Villamizar Fuentes had WDS's permission to operate the truck he was driving, that truck does not qualify as an "insured auto," meaning that Villamizar Fuentes was not using an "insured auto" with WDS's permission and therefore is not an insured under the Progressive policy with respect to this accident.

78. Neither WDS nor Villamizar Fuentes is an "insured" with respect to the accident which led to the underlying lawsuit.

79. As the requirements set forth in the liability insuring agreement are not established, the Progressive policy does not provide coverage for the accident.

80. Progressive has no duty to defend or indemnify either WDS or Villamizar Fuentes with respect to the underlying lawsuit or any claims of Carr-Flock arising out of the accident, including but not limited to the claims she has raised in the underlying lawsuit.

81. The Progressive policy does not provide coverage for the accident and for the claims raised by Carr-Flock, because the liability insuring agreement was not triggered.

82. Carr-Flock is named as a party herein so that she may assert her interests, if any, with regard to any insurance coverage or proceeds under the Progressive policy.

83. A real and actual controversy exists between the parties, and questions have arisen regarding coverage issues which ought to be decided by this honorable Court in order to safeguard the rights of the parties hereto.

84. Progressive has a substantial present interest in the relief sought.

WHEREFORE, Progressive Gulf Insurance Company respectfully seeks an Order from this Honorable Court:

1. Declaring that the commercial auto insurance contract it issued to Way Down South & Associates, LLC provides no coverage with respect to the January 22, 2024, accident, and that Progressive owes no indemnity obligation under the insurance contract;

2. Declaring that Progressive has no duty to defend Christian Jesus Villamizar Fuentes against the underlying lawsuit;

3. Declaring that Progressive has no duty to defend Way Down South & Associates, LLC against the underlying lawsuit; and

4. Awarding all other just and proper relief.

Respectfully submitted,

WATERS, TYLER,
HOFMANN & SCOTT, LLC

By: /s/ *Tricia K. Hofmann*
　　Tricia K. Hofmann, Atty. #20480-46

WATERS, TYLER,
HOFMANN & SCOTT, LLC
1947 East Spring Street
New Albany, IN 47150
(812) 949-1114